IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

---

| | |
|---|---|
| MARK CHARLES HAIK, an Individual; and RAYMOND A. HAIK, an Individual,<br><br>    Plaintiffs,<br><br><br><br>      vs.<br><br><br>SALT LAKE CITY CORPORATION; a municipal corporation; JEFFERY THOMAS NIERMEYER, an Individual; TOWN OF ALTA; a municipal corporation; and JOHN GULDNER an Individual,<br><br>      Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS<br><br><br><br><br><br>Case No. 2:12-CV-997 TS |

---

This matter is before the Court on three motions to dismiss: (1) Defendants Salt Lake City and Town of Alta's Joint Rule 12(b)(6) Motion to Dismiss; (2) Defendant Jeffery T. Niermeyer's Rule 12(b)(6) Motion to Dismiss; and (3) Defendant John Guldner's F.R.C.P. 12(b)(6) Motion to Dismiss for Failure to State a Claim. For the reasons discussed below, the Court will grant Defendants' Motions and dismiss Plaintiffs' Complaint.

## I.  MOTION TO DISMISS STANDARD

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiffs as the nonmoving party.[1]  Plaintiffs must provide "enough facts to state a claim to relief that is plausible on its face,"[2] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[3]  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[4]  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[5]  As the Court in *Iqbal* stated,

> only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

---

[1] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

[5] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.[6]

When considering the adequacy of a plaintiff's allegations in a complaint subject to a motion to dismiss, a district court not only considers the complaint, but also "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[7]  Thus, "notwithstanding the usual rule that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, '[a] district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'"[8]

## II.  BACKGROUND

The following facts are taken from Plaintiffs' Complaint, the materials attached thereto, and other documents referenced by the parties.  The facts are viewed in the light most favorable to Plaintiffs and are accepted as true for the purposes of Defendants' Motions.

Plaintiffs Mark and Raymond Haik (the "Haiks") own certain parcels of land in the Albion Basin (hereinafter "Albion Basin Subdivision").  The Albion Basin is located above the Alta and Snowbird ski resorts at the top of Little Cottonwood Canyon in Salt Lake County, Utah.

---

[6] *Iqbal*, 556 U.S. at 679 (alteration in original) (internal quotation marks and citations omitted).

[7] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B WRIGHT & MILLER § 1357 (3d ed. 2004 and Supp. 2007)).

[8] *Alvarado v. KOBTV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

3

To properly understand the current dispute, it is necessary to understand the contractual, regulatory, and legal background concerning water in the Albion Basin.

In 1963, Canyonlands, Inc., an apparent predecessor in interest to Plaintiffs, entered into a contract with the Little Cottonwood Water Company, which promised the availability of not more than 50 gallons per day to users in each of not more than 35 cabins to be constructed in Albion Basin Subdivision #1. Salt Lake City later succeeded to the Little Cottonwood Water Company's obligations under various water supply agreements, including the 1963 agreement.

In 1971, Marvin Melville, from whom Plaintiffs would later purchase their lots, applied for a permit "to construct a four-plex on lots in an approved subdivision known as Albion Basin Subdivision #1."[9] Salt Lake County refused to grant the permits, maintaining that the plaintiffs "had not proved their rights to an adequate culinary water supply."[10] Mr. Melville sought mandamus relief from the Utah courts.

In order to obtain a building permit, the county required 400 gallons of water per day, per unit. Mr. Melville argued that he had sufficient water to meet these requirements, pointing to a spring and the agreement with the Little Cottonwood Water Company. The Utah Supreme Court found that Melville did not own the rights to the spring water. The court also found that the agreement with the Little Cottonwood Water Company did not provide sufficient water. As stated, that agreement only allowed for "a quantity of water not to exceed 50 gallons per day."[11]

_____

[9]*Melville v. Salt Lake Cnty.*, 570 P.2d 687, 687 (Utah 1977).

[10]*Id*. at 688.

[11]*Id*. at 689.

4

Based on this, the Utah Supreme Court found that "[a]t most plaintiffs have proved that they may have a right to 50 gallons of water per unit constructed, which does not meet the County Board of Health's requirement of 400 gallons per unit per day."[12]  As a result, the Utah Supreme Court affirmed the trial court's dismissal of Mr. Melville's request for mandamus relief.

In 1976, Salt Lake City and the Town of Alta entered into the Water Supply Agreement. Under the Water Supply Agreement, Salt Lake City agreed "to make available to Alta for its use, as hereinafter described, the normal flow of raw, untreated water, not to exceed 265,000 gallons per day."[13]  However, the Water Supply Agreement stated that Alta's water "pipelines shall not be extended to or supply water to any properties or facilities not within the present city limits of Alta without the prior written consent of" Salt Lake City.[14]  The Haiks' property lies outside the Alta city limits as they existed in 1976.

In 1991, Salt Lake City adopted its Watershed Ordinance.  Among other things, the Watershed Ordinance prohibited Salt Lake City from entering into any new water sales agreements or expanding any existing agreements, with three exceptions: (1) water sales for residential use to property owners with a spring on the property; (2) water sales to governmental entities for use on land they own or lease; or (3) water sales for snowmaking and fire protection in certain cases.

---

[12]*Id*.

[13]Docket No. 27, Ex. 4, at 1.

[14]*Id*. at 3.

Plaintiffs "stepped into this milieu" when they purchased their lots from Mr. Melville in 1994.[15]  After purchasing the property, the Haiks sought water from Alta.  Alta informed Plaintiffs that it did not provide water and sewer services to their property, and referred them to the Salt Lake City Department of Public Works.  Salt Lake City, in turn, declined to consent to an extension of Alta water pipes and water supply to Plaintiffs' property, relying on the Water Supply Agreement and the Watershed Ordinance.

Plaintiffs brought suit against Alta and Salt Lake City, alleging that Alta had a legal duty to extend municipal water service to their lots and that, without such extension, they were entitled to just compensation for a taking of their property.  Plaintiffs brought various claims, including claims that Alta and Salt Lake City violated the equal protection, due process, and takings clauses of the United States and Utah constitutions.

That matter was eventually removed to this Court and was heard by the Honorable Judge Bruce Jenkins.  On October 31, 1997, Judge Jenkins granted summary judgment in favor of Alta and Salt Lake City.  In a thorough decision, Judge Jenkins rejected all of Plaintiffs' claims.

Judge Jenkins first rejected Plaintiffs' equal protection claims against Alta.  Plaintiff had argued "that Alta, by refusing their requests to extend water service to the Haiks' Albion Basin properties, has acted in arbitrary and irrational fashion and has thereby denied the Haiks equal protection of the law."[16]  But this "contention presupposes the existence of a legal duty on the

_____

[15]*Haik, et al. v. Township of Alta, et al.*, Case No. 2:96-CV-732 BSJ, Docket No. 53, at 7 (D. Utah Oct. 31, 1997) (hereinafter "Jenkins Decision").

[16]*Id*. at 8.

part of Alta to supply water to property owners such as the Haiks, as well as the legal and

physical capacity to do so."[17]  Judge Jenkins held that Alta had no duty to supply water and that

their capacity to do so was constrained by the Water Supply Agreement.  Thus, the Court held

that "[w]ater is not available to the Haiks under the Water Supply Agreement absent Salt Lake

City's consent to an extension of service beyond Alta's 1976 limits.  Where Salt Lake City

withholds consent, Alta has no legal right to extend water service to the Haiks."[18]

> Judge Jenkins found:

> The Haiks have established no express legislative or contractual duty on
> the part of Alta to supply water to Albion Basin Subdivision #1.  Alta cannot
> fairly be burdened with an implied legal duty to supply water that Alta has no
> legal right to use.  Nor can it fairly be said that Alta has denied to any person the
> equal protection of its laws simply because it has failed to supply what it does not
> have the legal right to supply.
> It is Salt Lake City, not Alta, that holds the right and exercises the power.
> If a duty to supply water exists, that duty must devolve upon the entity
> with legal right to, and lawful control of the water that may be physically available
> to the Haiks' property—Salt Lake City.[19]

> The Court then turned to the Haiks' claims against Salt Lake City.  The Haiks asserted

"no duty on the part of Salt Lake City to supply water to the Albion Basin property" as their

property was beyond the city limits.[20]  However, the city could supply surplus water if it chose to

do so, but the city was not required to do so.

---

[17]*Id.*

[18]*Id.* at 13-14.

[19]*Id.* at 17.

[20]*Id.*

The Haiks argued that the refusal by the city to provide water breached the covenant of good faith and fair dealing.  Judge Jenkins rejected this claim, finding that "the Haiks have failed to establish that Salt Lake City has breached any duty reasonably to give or refuse consent, whether under the implied covenant of good faith and fair dealing, or otherwise."[21]  The Court also rejected the Haiks' equal protection claim against the city, finding that "[t]he equal protection yardstick is simply not available to measure Salt Lake City's exercise of its contractual power to consent pursuant to . . . the Water Supply Agreement."[22]

Judge Jenkins also rejected the Haiks' takings claim, stating:

> The Haiks still have in October of 1997 what they purchased from Marvin Melville in October of 1994: lots in Albion Basin Subdivision #1 with appurtenant water rights limited to 50 gallons per day per unit under the 1963 agreement.  They retain the full bundle of property rights they purchased.  And notwithstanding the Haiks' assertion that at the time of annexation, Albion Basin property owners had a right to expect that they would be able to build homes on their land, they still lack one strand of the bundle that their predecessor in interest also did not have: a legal right to use water in an amount sufficient to satisfy the health department requirement of 400 gallons per day per unit.  The Haiks cannot build on their property, not because Alta or Salt Lake City have changed the rules, but rather because the rules remain the same.[23]

The Tenth Circuit Court of Appeals affirmed Judge Jenkins' summary judgment ruling in all respects.[24]  On Plaintiffs' equal protection challenge, the Tenth Circuit held that "'[t]he

---

[21]*Id*. at 20.

[22]*Id*. at 21-22.

[23]*Id*. at 22-23 (quotation marks and citation omitted).

[24]*Haik v. Town of Alta*, 176 F.3d 488 (10th Cir. 1999) (unpublished decision).

interest in water for real estate development is not a fundamental right.'"[25]  Thus, to overcome

Plaintiffs' challenge, Alta and Salt Lake City needed only "some rational relation to a legitimate

state interest."[26]  The Tenth Circuit found that Alta had a legitimate interest in refusing to extend

its water lines to the Haiks' property, namely not breaching the 1976 Water Supply Agreement.

"Thus, while Alta may have the physical capacity to supply water to the Haiks' lots, it does not

have the legal right to do so, and to compel Alta to breach its contract would be unreasonable."[27]

The Tenth Circuit further found that "Salt Lake City has a legitimate interest in preserving its

watershed" and that "[t]he Haiks failed to establish that Salt Lake City's refusal to consent to the

extension of Alta's water lines to their property as irrational or arbitrary."[28]

> In short, Alta and Salt Lake City proffer they had to draw the line somewhere, and
> chose to do so in the 1976 Agreement at Alta's 1976 town boundaries.  They do
> not claim to be seeking to stop all development in the canyon, or even all
> development in Alta for that matter.  Rather, their purported objective is to curtail
> further environmentally harmful development outside Alta's 1976 town
> boundaries.  Line-drawing inevitably requires that some persons who have an
> almost equally strong claim to favored treatment be placed on different sides of
> the lines.  [That] the line might have been drawn differently at some points is not
> a matter for judicial consideration.[29]

> The Tenth Circuit also rejected Plaintiffs' takings claim.

> The Haiks cannot maintain a taking claim because they did not have a protectable
> interest in property that was taken or damaged by Alta's denial of a building

---

[25]*Id*. at *3 (quoting *Lockary v. Kayfetz*, 917 F.2d 1150, 1155 (9th Cir. 1990)).

[26]*Id*.

[27]*Id*. at *4.

[28]*Id*.

[29]*Id*. at *5 (quotation marks and citation omitted).

permit.  Alta's denial of a building permit was based on the health department requirement of 400 gallons of water per day per unit, which the Haiks did not meet.[30]

Around the same time as this litigation was occurring in this Court, Salt Lake City filed certain change applications with the State Engineer that are at the center of Plaintiffs' Complaint here.

Under Utah law, a person entitled to use water may change a point of diversion, place of use, or purpose of water use by filing a change application with the State Engineer.[31]  If certain requirements are met, the State Engineer may approve a change application.[32]  However, the State Engineer has no authority to determine the rights of parties, and proceedings before the State Engineer do not constitute adjudications of water rights.[33]

If an application is granted, the person is authorized to proceed with the construction of necessary works, take any steps required to apply the water to the use named in the application, and perfect the proposed application.[34]  Within the time set out by the State Engineer, the applicant must construct any necessary works, apply the water to beneficial use, and file proof with the State Engineer.[35]  The State Engineer may extend the time required to construct

---

[30]*Id*. at *7.

[31]Utah Code Ann. § 73-3-3(3), (4).

[32]*Id*. § 73-3-8.

[33]*Jensen v. Jones*, 270 P.3d 425, 428 (Utah 2011).

[34]Utah Code Ann. § 73-3-10.

[35]*Id*. §§ 73-3-12(2)(a), -16.

necessary works and put the water to beneficial use.[36]  If the State Engineer is satisfied that the application has been perfected and the water has been put to beneficial use, the state engineer will issue a change certificate.[37]  Applicants may withdraw their application or simply let it lapse.[38]

At issue here are certain change applications filed by Salt Lake City: applications a16846 and a16844.  These applications were approved by the State Engineer and have been extended.  However, there is nothing in the record to suggest that the applications have been perfected or that a certificate of change has been issued.

The change applications become important because Judge Jenkins, as part of the summary judgment process, "requested the submission of additional data concerning water availability."[39]  Defendants did not disclose the change applications in their response to Judge Jenkins.  However, Salt Lake City did disclose the water quantities it had committed by contract to the Alta and Albion Basin areas.  In its submission, Salt Lake City noted "that the decision to refuse to deliver water [to the Haiks] was not primarily based upon availability but rather upon the terms of the Water Sales Agreement and sound watershed management and water quality practices."[40]

---

[36]*Id*. § 73-3-12(b).

[37]*Id*. § 73-3-17.

[38]*Id*. §§ 73-3-17(4), -18.

[39]Jenkins Decision, at 2.

[40]Docket No. 2, Ex. 8, at 3.

In September 2010, Plaintiff Mark Haik applied to the Salt Lake Valley Health Department for waste water system approval for single family residences in the Albion Basin Subdivision, and also filed an application with the Town of Alta for a building permit.  In response, Defendant Niermeyer, the Director of Salt Lake City's Department of Public Utilities, sent a letter to the Salt Lake Valley Heath Department and the Town Administrator of Alta, Defendant Guldner, in which he stated:

> The Albion Basin Subdivision is currently allowed water use under a water Agreement dated May 22, 1963 between Canyonlands, Inc. and Salt Lake City as the successor in interest to the Little Cottonwood Water Company.  The amount of water allowed under the contract cannot exceed 50 gallons per day per connection.
> Mr. Haik has requested certification of water for the two above-noted properties . . . .  Based on our understanding of the State requirement of 400 gpd, and Fire Department requirement of 1750 gpm . . . the contracted amount is insufficient to meet the current standards for water supply.[41]

On December 13, 2011, the Salt Lake Valley Heath Department denied Plaintiffs' applications for waste water systems finding, in part, that Plaintiffs were unable to show a sufficient water supply.  This decision was upheld by a hearing officer on October 24, 2012.[42]

The following day, Plaintiffs brought this action.  Plaintiffs' Complaint contains the following claims: (1) an action to set aside judgment; (2) violation of equal protection; (3) violation of substantive due process; (4) violation of procedural due process; (5) misrepresentation; and (6) civil conspiracy.

---

[41]Docket No. 19, Ex. 18.

[42]Docket No. 27, Ex. 9.

III.  DISCUSSION

All of Plaintiffs' claims center around the change applications.  Plaintiffs argue that the change applications show that water is available and should be provided to them.  Plaintiffs argue that, by failing to disclose or intentionally withholding information about the change applications, Defendants engaged in all sorts of malfeasance.  Thus, in order for any of Plaintiffs' claims to succeed, Plaintiffs must show that they are entitled to water and that Defendants have refused to provide water to which they are entitled.

Unfortunately for Plaintiffs, they cannot make this showing.  Alta has refused to provide water because it cannot do so under its contract with Salt Lake City.  The city, in turn, has declined to provide water based on the 1963 Agreement and to further its interest in the protection of the watershed.

Plaintiffs point to the change applications to rebut the reasons put forth by Alta and Salt Lake City, but Plaintiffs have failed to provide any allegations that the change applications entitle them to water.  While the change applications may show some future ability for Salt Lake City to provide water to the Albion Basin Subdivision, there is no obligation to do so.  The only water right that Plaintiffs have shown is set forth in the 1963 Agreement.  As has been stated by the Salt Lake Valley Health Department, the Utah Supreme Court, the District Court for the District of Utah, and the Tenth Circuit Court of Appeals, that amount is insufficient to allow for development.

Based on this simple fact, all of Plaintiffs' claims fail and Defendants' Motions to Dismiss must be granted.  Though the Court could simply grant Defendants' Motion on this

ground, the other arguments presented by Defendants provide additional grounds to warrant dismissal.

A.     RES JUDICATA

Defendants argue that Plaintiffs' claims are largely barred by res judicata. "The doctrine of res judicata embraces two distinct branches: claim preclusion and issue preclusion."[43] "Claim preclusion involves the same parties or their privies and also the same cause of action, and this precludes the relitigation of all issues that could have been litigated as well as those that were, in fact, litigated in the prior action."[44] "Issue preclusion, on the other hand, arises from a different cause of action and prevents parties or their privies from relitigating facts and issues in the second suit that were fully litigated in the first suit."[45]

In order for claim preclusion to bar a subsequent cause of action, the following requirements must be met: (1) both cases must involve the same parties or their privies; (2) the claim that is alleged to be barred must have been presented in the first suit or must be one that could and should have been raised in the first action; and (3) the first suit must have resulted in a final judgment on the merits.[46]

Issue preclusion applies when the following four elements are met: (1) the party against whom issue preclusion is asserted must have been a party to, or in privity with, a party to the

---

[43]*Macris & Assoc., Inc. v. Neways, Inc.*, 16 P.3d 1214, 1219 (Utah 2000).

[44]*Id.* (quotation marks and citation omitted).

[45]*Id.* (quotation marks and citation omitted).

[46]*Madsen v. Borthick*, 769 P.2d 245, 247 (Utah 1988).

prior adjudication; (2) the issue decided in the prior adjudication must be identical to the one presented in the instant action; (3) the issue in the first action must have been completely, fully, and fairly litigated; and (4) the first suit must have resulted in a final judgment on the merits.[47]

In this case, the amount of water to which Plaintiffs are entitled under the 1963 Agreement, as well as the majority of the constitutional claims, have been decided and are barred by res judicata.  Therefore, they must be dismissed.

Plaintiffs argue that res judicata does not apply because of a change in circumstance. However, the only difference between this case and the prior cases involving Plaintiffs or their privies is the change applications.  As discussed, the State Engineer has no authority to determine the rights of parties, and proceedings before the State Engineer do not constitute adjudications of water rights.  Thus, there is nothing in the change applications that either entitles Plaintiffs to water or requires Defendants to provide that water.  Plaintiffs' only claim to water is the same as it has always been.  Therefore, Plaintiffs' claims are barred.

B.      ACTION TO SET ASIDE JUDGMENT

Plaintiffs bring an independent action to set aside judgment pursuant to Fed. R. Civ. P. 60(d)(1) and (3).  Rule 60(d)(1) and (3) provide that the rule does not limit a court's power to entertain an independent action to relieve a party from a judgment, or set aside a judgment for fraud on the court.

---

[47]*Oman v. Davis Sch. Dist.*, 194 P.3d 956, 965 (Utah 2008).

  *1.  Rule 60(d)(1)*

  Plaintiffs bring an independent action under Rule 60(d).  In *United States v. Beggerly*,[48] the United States Supreme Court held that "[i]ndependent actions must . . . be reserved for those cases of 'injustices which, in certain circumstances, are deemed sufficiently gross to demand a departure' from rigid adherence to the doctrine of res judicata."[49]  Thus, "an independent action should be available only to prevent a grave miscarriage of justice."[50]  In *Beggerly*, the Court found that a party failing to make a full disclosure to the trial court did "not nearly approach this demanding standard."[51]

  In this case, Plaintiffs' plausible allegations state that Defendants failed to provide allegedly relevant information to the Court, specifically the existence of the change applications. As stated, the change applications do not grant Plaintiffs any water rights and do not impose upon Defendants any duty to provide Plaintiffs water.  Therefore, the relevance of such information to the earlier proceedings in this Court is minimal.

  Even taking as true Plaintiffs' allegation that Defendants withheld this information, such an allegation does not meet the high burden necessary to bring an independent action.  This case is similar to the facts of *Beggerly*, where a party failed to make a full disclosure to the court.  The Supreme Court found that such conduct did not meet the "demanding standard" required for an

---

  [48]524 U.S. 38 (1998).

  [49]*Id*. at 46 (quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244 (1944)).

  [50]*Id*. at 47.

  [51]*Id*.

independent action to set aside judgment.  The same can be said here.  Therefore, Plaintiffs have

failed to show that setting aside the judgment is necessary to prevent a grave miscarriage of

justice.

> 2.      *Rule 60(d)(3)*

Plaintiffs further allege fraud on the court.

Fraud on the court . . . is fraud which is directed to the judicial machinery itself
and is not fraud between the parties or fraudulent documents, false statements or
perjury.  It has been held that allegations of nondisclosure in pretrial discovery
will not support an action for fraud on the court.  It is thus fraud . . . where the
impartial functions of the court have been directly corrupted.[52]

The Tenth Circuit has stated:

Generally speaking, only the most egregious misconduct, such as bribery of a
judge or members of a jury, or the fabrication of evidence by a party in which an
attorney is implicated will constitute a fraud on the court.  Less egregious
misconduct, such as nondisclosure to the court of facts allegedly pertinent to the
matter before it, will not ordinarily rise to the level of fraud on the court.[53]

The court has further stated:

We think it clear that "fraud on the court," whatever else it embodies, requires a
showing that one has acted with an intent to deceive or defraud the court.  A
proper balance between the interests underlying finality on the one hand and
allowing relief due to inequitable conduct on the other makes it essential that there
be a showing of conscious wrongdoing—what can properly be characterized as a
deliberate scheme to defraud—before relief from a final judgment is appropriate
under the *Hazel–Atlas* standard.  Thus, when there is no intent to deceive, the fact
that misrepresentations were made to a court is not of itself a sufficient basis for
setting aside a judgment under the guise of "fraud on the court."[54]

---

[52]*Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985) (citation omitted).

[53]*Weese v. Schukman*, 98 F.3d 542, 552-53 (10th Cir. 1996) (quoting *Rozier v. Ford
Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978)).

[54]*Robinson v. Audi Aktiengesellschaft*, 56 F.3d 1259, 1267 (10th Cir. 1995).

17

Fraud upon the court must be proven by clear and convincing evidence.[55]

In this case, the Court is presented with, at most, nondisclosure of facts allegedly pertinent to the case before Judge Jenkins.  The Tenth Circuit has made clear that such misconduct does not ordinarily rise to the level of fraud on the Court.  Though Plaintiffs do their best to impute an evil intent to Defendants, their allegations falls short of what is required to substantiate a claim of fraud on the Court.  Therefore, this claim must be dismissed.

## C.   CONSTITUTIONAL CLAIMS

### 1.   *Equal Protection*

Plaintiffs appear to assert a class-of-one theory.  To prevail under a class-of-one theory, "a plaintiff must first establish that others, 'similarly situated in every material respect' were treated differently."[56]  "A plaintiff must then show this difference in treatment was without rational basis, that is, the government action was irrational and abusive and wholly unrelated to any legitimate state activity."[57]  The Tenth Circuit has "recognized a substantial burden that plaintiffs demonstrate others similarly situated in all material respects were treated differently and that there is no objectively reasonable basis for the defendant's action."[58]  The Tenth Circuit has also recently clarified that, under *Twombly* and *Iqbal*, a plaintiff must meet this "substantial

---

[55]*Weese*, 98 F.3d at 552.

[56]*Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011) (quoting *Jicarilla Apache Nation v. Rio Arriba Cnty.*, 440 F.3d 1202, 1210 (10th Cir. 2006)).

[57]*Id.* (quotation marks and citations omitted).

[58]*Id.* at 1217 (quotation marks and citations omitted).

burden" by offering "enough specific factual allegations to 'nudge[] their claims across the line from conceivable to plausible.'"[59]

Plaintiffs' Complaint fails to meet these pleading standards.  Plaintiffs make the conclusory allegation that they are similarly situated to other landowners.  However, there are not sufficient factual allegations to support these conclusory statements.  Further, Plaintiffs' equal protection claim fails because Plaintiffs cannot show that any differential treatment was without a rational basis.  As has been held by this Court and the Tenth Circuit, there are legitimate reasons to deny Plaintiffs' requests for water rights: compliance with contract provisions and protection of the watershed.

Plaintiffs point to a provision of the Utah constitution and two decisions from the Utah Supreme Court in support of their argument, but they are not helpful.  Plaintiffs rely on Article XI, Section 6 of the Utah constitution.  That provision states that municipalities are forbidden from leasing, selling, alienating, or disposing their waterworks, water rights, or sources of water supply, but that such may be used to supply its inhabitants with water at reasonable charges. Next, Plaintiffs cite to *County Water System, Inc. v. Salt Lake City*,[60] where the Utah Supreme court held that Salt Lake City may sell and distribute surplus water beyond its corporate limits.[61] Finally, Plaintiffs cite *Platt v. Town of Torrey*,[62] which stands for the proposition that

---

[59]*Id*. at 1219 (quoting *Twombly*, 550 U.S. at 570).

[60]278 P.2d 285 (Utah 1954).

[61]*Id*. at 290.

[62]949 P.2d 325 (Utah 1997).

municipalities must deal reasonably with nonresidents who purchase surplus water from the municipality.[63]

Plaintiffs read these together as requiring the city to provide water to them, especially in light of the change applications which, if perfected, would allow the city to do so.  However, Plaintiffs read too much into this constitutional provision and these two cases.  When read together, these statements do not require the city to provide water to Plaintiffs, they merely permit the city to do so and, if the city so chooses, a reasonableness requirement is imposed.  Nor do these provisions stand for the proposition that the city cannot have legitimate reasons (such as the protection of the watershed) to decline to supply water to nonresidents.  Therefore, these provisions are not helpful to Plaintiffs and do not save this claim from dismissal.

    2.    *Substantive Due Process*

"Substantive due process bars 'certain government actions regardless of the fairness of the procedures used to implement them.'"[64]  "Executive action violates substantive due process when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'"[65]

Plaintiffs' Complaint falls well short of this standard.  All that Plaintiffs' allegations reveal is that Sale Lake City and Alta have consistently taken the same position toward Plaintiffs.  That is, Alta has refused to extend its water lines to Plaintiffs' property, because it is barred from

---

[63]*Id*. at 332.

[64]*Brown v. Montoya*, 662 F.3d 1152, 1172 (10th Cir. 2011) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998)).

[65]*Id*. (quoting *Cnty. of Sacramento*, 523 U.S. at 847).

doing so by its agreement with Salt Lake City, and Salt Lake City has consistently refused Plaintiffs' requests for water.  Plaintiffs have failed to provide anything showing that the city cannot so refuse.  As Plaintiffs have failed to establish any right to water, and indeed several courts have detailed exactly why Plaintiffs do not have any such right, there is nothing about the Defendants' actions that shock the conscience.

      *3.*     *Procedural Due Process*

      "To assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process."[66]

      As is detailed above, Plaintiffs and their predecessor in interest have been afforded an appropriate level of process.  Plaintiffs have repeatedly requested and been denied water sufficient to allow for the development of their property.  Their latest request was denied by the Salt Lake Valley Health Department.  That denial was subsequently upheld by a hearing officer. In addition to being heard by state administrative bodies, Plaintiffs' disputes have wound their way through the state and federal court systems.  At every step, Plaintiffs have been given the ability to fully litigate their claims.  As a result, Plaintiffs' allegations that they have been denied procedural due process are not plausible.

---

[66]*Guttman v. Khalsa*, 669 F.3d 1101, 1113-14 (10th Cir. 2012) (quoting *Hatfield v. Bd. of Cnty. Comm'rs for Converse Cnty.*, 52 F.3d 858, 862 (10th Cir. 1995)).

As Plaintiffs have not shown a violation of their constitutional rights, let alone one that is clearly established, the individual Defendants are entitled to qualified immunity.

D.      CIVIL CONSPIRACY AND MISREPRESENTATION

Plaintiffs allege that Defendant Guldner, Alta's Town Administrator, made false statements to owners of land in the Albion Basin Subdivision in 1993 concerning the availability of water to service the Albion Basin.  Similarly, Plaintiffs complain of statements made by city attorneys to this Court.  Finally, Plaintiffs take issue with the statements made by Defendant Niermeyer in his May 23, 2011 letter.  Plaintiffs allege that these various actions constitute civil conspiracy and misrepresentation.[67]

"To prove a civil conspiracy, plaintiff must show the following elements: (1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof."[68]

To state a claim for fraudulent misrepresentation, Plaintiffs must allege:

(1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.[69]

---

[67]Plaintiffs also attempt to assert a § 1983 conspiracy claim.  However, such a claim does not appear in their Complaint and cannot be raised for the first time in a reply brief.

[68]*Israel Pagan Estate v. Cannon*, 746 P.2d 785, 790 (Utah Ct. App. 1987).

[69]*Armed Forces Ins. Exch. v. Harrison*, 70 P.3d 35, 40 (Utah 2003).

For substantially the same reasons stated above with regard to Plaintiffs' other claims, these claims too must fail.  Simply stated, Plaintiffs can point to no unlawful acts or misrepresentations by Defendants.  Further, these claims would be barred for various reasons under the Utah Governmental Immunity Act.  Therefore, these claims must be dismissed.

E.      ATTORNEY'S FEES

In addition to seeking dismissal, Defendants Salt Lake City and the Town of Alta seek attorney fees pursuant to 28 U.S.C. § 1927.  However, Defendants do not provide any discussion or analysis on this issue.  While attorney fees may be warranted in this case, without further analysis on this point, Defendants' request must be denied at this time.

IV.  CONCLUSION

It is therefore

ORDERED that Defendants' Motions to Dismiss (Docket Nos. 26, 28, and 30) are GRANTED.  Plaintiffs' Complaint is dismissed with prejudice.

DATED   March 12, 2013.

BY THE COURT:

_____

TED STEWART
United States District Judge

23